Case 2:15-cv-00105   Document 37   Filed in TXSD on 03/15/16   Page 1 of 14

United States District Court
Southern District of Texas

**ENTERED**
March 15, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MIKE O SALAZAR, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 2:15-CV-105 |
| | § | |
| BLOOMIN' BRANDS, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Plaintiff Mike O. Salazar ("Salazar") commenced this action arising out of his employment at Outback Steakhouse by filing his complaint on March 2, 2015. Dkt. No. 1. Defendants, collectively referred to as "Outback," have filed a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss three of Salazar's claims. Dkt. No. 16. The Court also has before it supplemental memoranda of law regarding transfer of this case under the first-to-file rule, Dkt. Nos. 34–35.

### I. Background

In the introduction to his complaint, Salazar describes this lawsuit as follows:

> Salazar seeks redress for himself for gender discrimination created by Defendants' fatally flawed implementation of a federal Consent Decree entered in 2009 to create a gender-neutral workplace in all Outback Steakhouse restaurants across the country . . . . [R]ather than implement the Consent Decree in a gender-neutral way, Defendants preferentially promoted less qualified women. Defendants then retaliated against Salazar by firing him when he complained about the discrimination.

Compl. ¶ 1.02, Dkt. No. 1; *see also id.* ¶ 5.01 (alleging that consent decree applied at all times relevant to this suit and identifying decree as entered in *EEOC v. Outback Steakhouse of Fla., LLC, et al.,* No. 06-CC-01935-CMA-KLM (D. Colo. Dec. 29, 2009)).

Salazar also alleges that Outback employees threatened to retaliate against him and his spouse if either opted into an FLSA collective action pending before the United States District Court for the District of Nevada (*Cardoza* or "the Nevada action"), *Cardoza et al. v. Bloomin' Brands, Inc. et al.*, No. 2:13-CV-1820-JD-NJK. Compl. ¶¶ 5.24–5.27. He avers that an Outback "supervisor sabotaged the collective action notice process in the FLSA Class Action" in *Cardoza. Id.* ¶ 5.27. Salazar seeks certification in this case of an FLSA collective action consisting of "all current and former hourly, non-exempt employees employed by Defendants at an Outback Steakhouse restaurant in Texas at any time during the statutory three-year time period, including but not limited to host, bartender, server, head wait server, line cook, take-away person, trainer, dishwasher, and busser." *Id.* ¶ 1.06 (footnote omitted).

Salazar pleads eight claims in his complaint. In addition to a wage-and-hour claim under the FLSA, Salazar brings a claim for gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-2(a); a Title VII retaliation claim; and claims under 42 U.S.C. §§ 1983 and 1985(3) premised on the theory that Outback and the Equal Employment Opportunity Commission acted together to violate his rights while implementing the consent decree. *See* Compl. ¶¶ 6.02—6.50. Salazar also pleads a claim for gender-discrimination under an unspecified section of the Texas Labor Code, a conversion claim, and negligence and gross negligence claims against Outback. *See id.* ¶¶ 6.51—6.68.

By order entered November 12, 2015, this Court raised the possibility of transferring this case to the United States District Court for the District of

Nevada or Colorado under the first-to-file rule. Dkt. No. 32 at 3; *see also Marks v. Mackey*, No. 6:14-CV-00441, 2014 WL 3530137, at *2 (W.D. La. July 15, 2014) ("The first-to-file rule may be raised by a district court sua sponte." (citations omitted)). The Court raised the possibility "that a transfer will promote efficiency and avoid the possibility of interfering with the Nevada action or promote comity by avoiding a pronouncement by this Court on whether Outback violated a sister court's consent decree." Dkt. No. 32 at 2—3 (citations omitted). The Court gave the parties a 14-day deadline to set forth their views on the possible transfer.[1] *Id.* at 3.

The parties have filed memoranda of law directed to whether transfer under the first-to-file rule is warranted. Dkt. Nos. 34–35. When Salazar filed his memorandum, he represented that the parties to *Cardoza* reached a settlement they anticipated finalizing by December 17, 2015. Pl.'s Mem. 3, Dkt. No. 35 (citing *Cardoza*, Dkt. No. 406[2]). According to *Cardoza's* docket sheet, a hearing on a motion for preliminary approval of the proposed settlement of the opt-in plaintiffs' claims has been set for April 11, 2016. *Cardoza*, Dkt. No. 417.

## II. The First-to-file Rule

"The federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal

---

[1] The Court entered its order advising the parties that it was considering transfer 14 days before Thanksgiving Day. Under Federal Rule of Civil Procedure 6(a), the parties had until the following Monday, November 30, 2015, to file a response because the Friday after Thanksgiving Day is a Texas holiday. *See* Fed. R. Civ. P. 6(a)(1)(C), 6(a)(6)(C) (extending period counted in days when it falls on a holiday and including holidays of state in which district court sits); Tex. Gov't Code § 662.003(b)(6) (West 2015) (listing Friday after Thanksgiving Day as holiday); *Lane v. Target Corp.*, Civ. A. No. C-05-306, 2007 WL 128904, at *1 n.1 (S.D. Tex. Jan. 12, 2007) (exempting Friday after Thanksgiving when calculating deadline under Fed. R. Civ. P. 6(a)).

[2] The Court cites to documents filed in *Cardoza* in this memorandum and order by using short forms such as "*Cardoza*, Dkt. No. 406."

rank—to exercise care to avoid interference with each other's affairs." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (quoting *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985)). The first-to-file rule should "maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case pending in another court." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999) (emphasis omitted). The Fifth Circuit has articulated the rule as follows: "when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Id.* at 603 (citing *Save Power*, 121 F.3d at 950 and *W. Gulf Mar. Ass'n*, 751 F.2d at 728). Indeed, the Fifth Circuit has held that the inquiry under the first-to-file rule is "properly limited . . . to the potential overlap between the two cases." *Id.* at 606. Within the limited scope of inquiry under the rule, "the likelihood of a jurisdictional dispute in the first-filed court may be a factor to consider in applying the rule, resolving the dispute in favor of that court's jurisdiction is never a condition precedent to applying it" because the second court runs the risk of "trenching on the authority of its sister court" by deciding the question of the first court's jurisdiction. *Id.* at 605, 606 (citations omitted) (describing this as "one of the very abuses the first-to-file rule is designed to prevent" and applauding second court's refusal to consider first court's jurisdiction as a proper "refus[al] to act as a 'super appellate court' ").

Complete identity of parties and issues need not be shown to invoke the first-to-file rule; "a substantial overlap in issues and parties" suffices. *Stewart Title Guar. Co. v. First Am. Title Ins. Co.,* No. H-15- 0354, 2015 WL 1393134, at *1 (S.D. Tex. March 25, 2015) (citing *Save Power*, 121 F.3d at 950); *see also Save Power*, 121 F.3d at 951 ("Complete identity of the parties is not required" under the first-to-file rule.). Once a likelihood of substantial overlap has been shown,

"a plaintiff must demonstrate compelling circumstances that caution against transfer" to avoid application of the first-to file rule. *Stewart Title Guar.,* 2015 WL 1393134, at *1 (citing *White v. Peco Foods, Inc.,* 546 F. Supp. 2d 339, 342 (S.D. Miss. 2008) and *Mann Mfg., Inc. v. Hortex*, 439 F.2d 403, 407 (5th Cir. 1971)).

### III. Analysis

Salazar argues that compelling reasons exist not to transfer this case to the United States District Court for the District of Nevada where *Cardoza* is pending because "the FLSA is a recognized exception to the first-to-file rule." Pl.'s Mem. 11. He makes a similar argument regarding the Colorado action. *Id.* at 14. He also asserts that this case and *Cardoza* are unlikely to raise substantially overlapping issues because he focuses on his gender-discrimination claims here. Outback, on the other hand, contends that the Court should sever Salazar's FLSA claim under the first-to-file rule and retain the balance of his claims. Defs.' Mem. 5–7, Dkt. No. 34. It posits that the Colorado action is no longer pending for first-to-file-rule purposes because that court lacks jurisdiction to enforce its consent decree entered in the Colorado action.[3] Defs.' Mem. 5. Based on the following analysis, the Court finds that the balance of interests

---

[3] The Court does not reach the parties' arguments about the Colorado action, and nothing in this opinion should be construed as expressing any view on another court's jurisdiction to enforce the consent decree. *See Cadle Co.*, 174 F.3d at 606 ("The district court correctly refused to act as a 'super appellate court' by entertaining either Cadle's jurisdiction or the defendants' standing arguments, and properly limited its inquiry to the potential overlap between the two cases."). By transferring to the court in which *Cardoza* is pending, this Court avoids addressing questions of the issuing court's jurisdiction to enforce the consent decree in the face of allegations of Salazar such as his averment that Outback "created misleading statistics about the size of Outback's female managerial applicant pool, by which Outback intended to mislead the Consultant mandated by the Consent Decree and the EEOC for purposes of compliance with the Consent Decree and EEOC's monitoring . . . ." Compl. ¶ 5.72; *see Cadel Co.*, 174 F.3d at 604–06.

protected by the first-to-file rule favors transfer to the court in which *Cardoza* is pending.

### A. Overlapping Parties and Issues

The live complaints in *Salazar* and *Cardoza* show a substantial likelihood of overlapping issues on the FLSA claims asserted. The fifth claim for relief in Salazar's complaint bears a striking resemblance to the second claim for relief pleaded in the live complaint in *Cardoza*. Both complaints seek payment of minimum wages, overtime, and compensation for time spent attending mandatory training and meetings, and both sets of claims arose during a substantially overlapping time period—2010 and 2014 in *Salazar* and the three years prior to October 4, 2013, when the original complaint was filed in *Cardoza*. *Compare* Compl. ¶¶ 1.04, 5.49–5.51, 5.65–5.68, 6.47—6.50, *Salazar*, No. 2:15-CV-105 (S.D. Tex. Mar. 2, 2015) *with* 3d Am. Compl. ¶¶ 159—63, *Cardoza*, Dkt. No. 357 (D. Nev. Sept. 15, 2015). Salazar argues that his FLSA claims sweep more broadly than those in *Cardoza*, highlighting his allegations that Outback cannot deduct tip credits from similarly situated employees' minimum wages because it does not make the disclosures required by § 203(m) of the FLSA . *See* Compl. ¶¶ 5.53–5.64. Because FLSA plaintiffs need only "plead a violation of the minimum wage provisions contained in section 206, and the burden to prove that the requirements of the tip credit exception contained in section 203(m) were met rests upon [the d]efendant," the *Cardoza* complaint's lack of a similar allegation does not by itself establish that the issue is substantially unlikely to arise there. *Pedigo v. Austin Rumba, Inc.*, 722 F. Supp. 2d 714, 724 (W.D. Tex. 2010) (footnote omitted); *see also id.* at 723–24 (collecting cases and rejecting argument that plaintiff has burden to prove that the exemption created by § 203(m) applies). The live complaint in *Cardoza* includes an allegation that Outback "claim[s] tip credits for wage payments for time when Plaintiffs and similarly-situated employees are not performing tipped work or not performing

labor incidental to their occupations." 3d Am. Compl. ¶ 52, *Cardoza*, Dkt. No. 357. To address that allegation, Outback would have to show, inter alia, that it "inform[ed] the employee of the provisions in section 203(m)." *Pedigo*, 722 F. Supp. 2d at 721; *see also id*. at 724–25 (considering sufficiency of employer's evidence of notice to employees at summary judgment). Salazar endeavors to show that the issue has not arisen in *Cardoza*, and the Court accordingly finds that the § 203(m) allegations in the live complaint in *Cardoza* sufficient to infer a reasonable possibility of substantial overlap with Salazar's allegations that Outback did not comply with § 203(m)'s notice requirements. Courts in this Circuit have found substantial overlap in FLSA actions with analogously overlapping claims and defenses, and this Court does as well. *See, e.g., Tillery v. Higman Barge Lines, Inc.*, No. 2:14-CV-40, 2014 WL 1689942, at *1–*3 (S.D. Tex. Apr. 29, 2014) (Gonzales Ramos, J.) (finding FLSA actions in which tankermen challenged their classification as exempt seamen substantially overlapped and transferring to first-filed division); *White*, 546 F. Supp. 2d at 342–43 (applying first-to-file rule to action filed by plaintiffs working in different chicken-processing plants where "the plaintiffs in both actions assert[ed] that they were improperly denied pay for time they spent donning and doffing protective and sanitary clothing, as well as time spent navigating security checkpoints and walking to and from their respective break areas" and brought FLSA claims).

     As for the overlap of the opt-in classes, Salazar implies that he would have been eligible to opt into *Cardoza* when he alleges that management employees threatened him and his spouse to dissuade them from doing so. Compl. ¶ 5.27. In a similar vein, Outback asserts that Salazar will have an opportunity "to participate in the recovery or to object to the terms" of the settlement in *Cardoza*. Defs.' Mem. 7. Indeed, the *Cardoza* court certified a national class of "all current and former hourly employees of [the same Defendants named in

*Salazar*] who are or were employed at an Outback Steakhouse restaurant within the past three years." Order 4, *Cardoza*, Dkt. No. 151 (D. Nev. Oct. 24, 2014). Plaintiff nevertheless argues that the *Cardoza* court had not certified a Texas subclass when he filed this case. Pl.'s Mem. 12. The opinion granting conditionally certification in *Cardoza* rejected Outback's efforts to limit the geographic scope of the opt-in class, however. *Cardoza*, Dkt. No. 151 at 5 ("[T]he declarations submitted by plaintiffs suggest that the FLSA-violative practices alleged here are not geographically localized and do not exist in a concentrated cluster that cautions a more geographically limited notice than the nationwide notice that plaintiffs seek. Accordingly, the notice shall be provided to qualifying individuals in all states in which the Outback Defendants operate Outback Steakhouse restaurants."). The *Cardoza* court stated that "[i]f certification becomes appropriate at a later date, subclasses may also be appropriate," *id.* at 6, but a review of the *Cardoza* docket sheet discloses no order certifying a subclass. Instead, the pending motion for preliminary approval of the proposed settlement describes the claims as national in scope. *See Cardoza*, Dkt. No. 413 at 22. For these reasons, the Court finds that the scope of the proposed opt-in classes substantially overlap. *See Tillery,* 2014 WL 1689942, at *2–*3; *White*, 546 F. Supp. 2d at 343. In sum, "the core issue" raised by the FLSA wage-and-hour claims are the same, and the foregoing analysis demonstrate a substantial likelihood that "much of the proof adduced . . . would likely be identical." *Int'l Fid. Ins. Co. v. Sweet Little Mex. Corp.*, 665 F.3d 671, 678 (5th Cir. 2011) (quoting *Mann*, 439 F.2d at 407).

### B. Less than Complete Overlap

Salazar's state-law and gender-discrimination claims make this a case of imperfect overlap, however. "Where the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest

of each forum in resolving the dispute." *Save Power*, 121 F.3d at 951 (quoting *TPM Holdings, Inc. v. Intra–Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996)).

Salazar asserts that the overlap is not extensive; "his allegations focus on his reverse gender-discrimination claim and his associated state-law claims." Pl.'s Mem. 12. Salazar seeks conditional certification of an opt-in class limited to employees of Outback restaurants located in Texas, Compl. ¶ 1.06, and he brings claims under Texas law, *Id.* ¶¶ 6.51—6.68. Accordingly, it is reasonable to conclude that a Texas court has a greater interest than a court in Nevada in resolving this case. *Cf. Dewan v. M-I, L.L.C.*, Civ. A. No. H-12-3638, 2014 WL 2981362, at *4 n.10 (S.D. Tex. June 27, 2014) (noting party's statement that claims under California law predominated in first action filed in California court).

Nevertheless, Salazar's allegations of Outback's misconduct during the *Cardoza* opt-in period lead the Court to conclude that the risk of conflict and the courts' comparative interests in these actions favor transfer. The presence of nonoverlapping claims can be considered as one factor militating against transfer under the first-to-file rule. *See Jones v. Xerox Commercial Sols., LLC*, No. H-13-0650, 2013 WL 3245957, at *3 (S.D. Tex. June 26, 2013) (finding no substantial overlap in part because the plaintiffs' "pay claims are distinct from Plaintiffs' FLSA retaliation claims"); *Buckalew v. Celanese, Ltd.*, Civ. A. No. G-05-315, 2005 WL 2266619, at *3 (S.D. Tex. Sept. 16, 2005) (finding fact that first-filed case "includes claims of retaliation, intentional infliction of emotional distress, and harassment, which this lawsuit does not" weighed against transfer). However, the presence of unrelated claims has been found to weigh against transfer when the party seeking transfer has "failed to show any substantial likelihood of conflicting rulings . . . [or] if inconsistent rulings are issued, that problems and conflicts will arise." *Buckalew*, 2005 WL 2266619, at *3. Here, in contrast, Salazar's allegations not only place him facially within the

scope of the opt-in collective action conditionally certified in *Cardoza*, they also accuse Defendants of interfering with Salazar and his wife's opt-in rights in *Cardoza* by threatening them after they received notice of their right to opt into that case. Compl. ¶ 5.27. The *Cardoza* court has a motion for preliminary approval of a settlement of the opt-in plaintiffs' claims pending before it. *Cardoza*, Dkt. No. 413. Defendants acknowledge the relevance of Salazar's allegations to the settlement process when they assert that his FLSA wage-and-hour claims should be transferred to allow Salazar to participate in the settlement process there. Accordingly, this record shows that transfer is reasonably likely to avoid "embarrassing inconsistencies" which may be occasioned by this Court opining on Salazar's allegations that Defendants interfered with the opt-in process in *Cardoza*. *Cadle Co.*, 174 F.3d at 604; *cf. Mann*, 439 F.2d at 407–08 (holding second-filed court would interfere with injunction preventing further litigation entered in first-filed court if first-filed court proceeded to merits of patent case). The fact that the deadline to opt into *Cardoza* has passed does not weigh against transfer for the same reason, *see Akins v. Worley Catastrophe Response, LLC*, 921 F. Supp. 2d 593, 602 (E.D. La. 2013) (distinguishing *Greene v. H & R Block E. Enters., Inc.*, 727 F. Supp. 2d 1363, 1367 (S.D. Fla. 2010), on its procedural posture in which it "had a strong interest in enforcing its opt-in deadline and used its 'inherent power' to prevent an untimely 'back-door entry into a conditional class that has been [recently] closed' "), and particularly because Outback admits that Salazar could participate in the settlement process in *Cardoza*, Defs.' Mem.7.

Under binding Fifth Circuit precedent, it would be inappropriate for this Court to address Defendants' arguments that discovery on Salazar's gender-discrimination claims will interfere with the process of approving the settlement in *Cardoza*. Defs.' Mem. 6–7. In the Fifth Circuit, the transferee court has the prerogative of deciding "whether both [cases] should be allowed to proceed."

*Cadle Co.*, 174 F.3d at 605—06 (quoting *Mann*, 439 F.2d at 407). That is, "the 'first to file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." *Cadle Co.*, 174 F.3d at 606 (quoting *Sutter Corp. v. P&P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997)) (first alteration omitted). In addition to questions of the first-filed court's jurisdiction, *id.*, addressing the voluntary venue transfer factors, including the convenience to parties and witnesses, under 28 U.S.C. § 1404(a) trespasses upon the exclusive preserve of the first-filed court, *e.g., Tillery*, 2014 WL 1689942, at *2 (citing *Twin City Ins. Co. v. Key Energy Servs. Inc.*, Civ. A. No. H-09-0352, 2009 WL 1544255, at *6 (S.D. Tex. June 2, 2009)). Accordingly, this Court cannot address Defendants' argument that discovery in *Salazar* may interfere with *Cardoza* because that argument presupposes that the first-filed court will consolidate the two cases. *See id.* Illustratively, the Fifth Circuit held in *Mann*, supra, that "the ultimate determination of whether there actually was a substantial overlap requiring consolidation of the two suits in [the first-filed court in] New York belonged to the [first-filed court]." 439 F.2d at 408.

Nor does the Court reach Defendants' request to sever and transfer only Salazar's FLSA wage-and-hour claims on this record. In support of their request to sever, Defendants cite *Benavides v. Home Depot USA, Inc.*, Civ. A. No. H-06-0029, 2006 WL 1406722 (S.D. Tex. May 19, 2006) which granted a motion to sever and transfer an FLSA collective action to a first-file court. The parties in *Benavides* do not appear to have raised the argument that the first-filed court should decide the question of severance, and the question is not analyzed. *See id.* at *2–*3. Outback cites no Fifth Circuit case addressing whether the first-filed court's primacy over matters such as consolidation and transfer extends to severance. *See* Defs. Mem. 627. District courts in the Fifth Circuit have

arguably reached different conclusions on the issue, though only implicitly. *Compare Benavides,* 2006 WL 1406722, at *2–*3; *Ctr. for Restorative Breast Surgery, LLC v. Blue Cross Blue Shield of LA*, Civ. A. No. 06-9985, 2007 WL 1796196, at *1 (E.D. La. June 18, 2007) (conducting Rule 21 severance analysis where parties agreed to sever and transferring severed claims without considering whether first-filed court should address request to sever); *with Tex. Instruments Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 999 (E.D. Tex. 1993) (staying case because that first-filed court had prerogative to decide motion to sever claims and transfer to second-filed court). This Court need not decide whether the first-filed court's ultimate power to decide whether to consolidate extends to the converse power to decide the question of severance today, however, because Defendants do not discuss the standards that must be considered when deciding whether to sever claims, *see* Defs.' Mem. 7. *See generally Beechgrove Redev., L.L.C. v. Carter & Sons Plumbing, Heating & Air Conditioning, Inc.*, Civ. A. No. 07-8446, 2009 WL 382713, at *4–*6 (E.D. La. Feb. 11, 2009) (discussing differing severance standards under Federal Rules of Civil Procedure 20(b) and 21 and standard governing separate trials under Rule 42(b)); *Reid v. Gen. Motors Corp.*, 240 F.R.D. 260, 262–63 (E.D. Tex. 2007) (discussing Rule 42 and 21 standards).

    C. <u>Compelling Circumstances Militating Against Transfer</u>

Finally, under the headings of compelling circumstances and comity, Salazar contends that collective-action claims under § 216 of the FLSA, 29 U.S.C. § 216(b), fall into a purported exception to the first-to-file rule. As Salazar points out, a plaintiff who does not opt into a FLSA collective action retains a right to bring a separate FLSA suit. As another district court has explained, adopting the reasoning of *Yates v. Wal–Mart Stores*, 58 F. Supp. 2d 1217, 1218 (D. Colo. 1999), unlike a class action under Federal Rule of Civil Procedure 23, the FLSA

> allows "*any one or more employees* for and in behalf of himself or themselves and other employees similarly situated" to bring an action. 29 U.S.C. § 216(b) (emphasis added). Contrary to defendant's restrictive reading, this language can be read to permit more than one collective action by any one, or more than one, employee or group of employees. Had Congress wished to limit the number of collective actions that could be brought against an employer, it could have said that only "one action to recover" may be maintained on behalf of a group of employees. It did not do so. The only statutory restrictions on collective actions are that all defendants must be an "employer," all plaintiffs must file written consent forms to participate, and the action must be filed within the applicable statute of limitations. Thus, construing Section 216(b) liberally in favor of employees, I find that the statute permits plaintiffs to file the instant putative collective action and that such a reading of the text does not lead to absurd consequences.

*Akins*, 921 F. Supp. 2d at 598. The Court concurs with the *Akins* court's analysis of § 216(b). *See id*. at 602–03 (adopting this reasoning). Nevertheless, the case law demonstrates that the bare fact that two substantially overlapping cases are both putative collective actions under the FLSA does not automatically preclude transfer to safeguard the interests the first-to-file rule protects. *Compare id*. at 601–03 (conducting first-to-file analysis to deny motion to dismiss under rule because plaintiff could bring a second FLSA collective action); *Jones*, 2013 WL 3245957, at *2–*4 (conducting first-to-file analysis to deny motion to transfer) *with Tillery*, 2014 WL 1689942, at *1–*3 (transferring putative FLSA collective action to division in which first-file putative collective action was pending); *White*, 546 F. Supp. 2d at 342–43 (same result transferring to sister district where putative collective action was first filed).

### IV. Conclusion

For the foregoing reasons, the Court **ORDERS** this case transferred to the United States District Court for the District of Nevada under the first-to-file rule

13 / 14

because it is related to *Cardoza et al. v. Bloomin' Brands, Inc. et al.*, No. 2:13-CV-01820-JAD-NJK, presently pending in that court.

SIGNED this 15th day of March, 2016.

Hilda Tagle
Senior United States District Judge